**STATE of Tennessee, Appellee,**

**v.**

**Harold Homer THOMPSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 21, 1991.

No Permission to Appeal Applied for to the Supreme Court.

---

5. The record contains no evidence that either the contractor, the subcontractor, or the supplier are judgment-proof.

Gary L. McDonald, Kingston, for appellant.

Charles W. Burson, Atty. Gen., C. Anthony Daughtrey, Asst. Atty. Gen. of Tennessee, Nashville, Charles E. Hawk, Dist. Atty. Gen., Kingston, D. Roger Delp, Asst. Dist. Atty. Gen., Loudon, and Frank A. Harvey, Asst. Dist. Atty. Gen., Lenoir City, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Harold Homer Thompson, was convicted in a jury trial in the Morgan County Criminal Court of aggravated kidnapping, assault with intent to commit voluntary manslaughter, illegal possession of explosives and attempted escape for which he received an effective sentence of twenty-seven years as a Range II, multiple offender. In this appeal as of right, the defendant asserts that the cumulative and individual prejudice caused by the following claimed errors entitle him to a new trial:

(1) He was improperly shown to the jurors in prison attire and shackles.

(2) He was improperly shackled during the trial without a hearing to determine the need for such action.

(3) Uniformed, armed guards were improperly posted inside the room in which he was tried.

(4) The trial court failed to instruct the jury to disregard the shackles worn by the defendant.

The defendant was housed in the Morgan County Correctional Facility while serving sentences resulting from a previous murder conviction and a previous armed robbery conviction. Late one evening, he kidnapped a prison guard while using a .22 caliber pistol. He forced the guard to un-

lock the doors which admitted the defendant to the outside compound, at which point he released the guard and began to run.

Other guards had been alerted and, as a patrolling guard truck approached him, the defendant fired four shots. The guards said that he fired at the truck and ran. Two other guards testified that the defendant fired two shots at them, with the bullets hitting a metal fence nearby. Ultimately, the defendant surrendered. A homemade bomb was found in his coat pocket and another was found near the guard truck.

The defendant testified and disclosed his previous convictions. He told the jury about some of the poor treatment he was receiving from the guards, including his not being allowed family visitation.

In the course of his direct testimony, the defendant admitted to possessing the pistol, ammunition, three homemade bombs, wire cutters and a soldering iron. He admitted that he threw bombs during his escape attempt, which he admitted planning. He admitted taking the guard hostage and he admitted firing the pistol. However, he denied trying to kill the guards and claimed that he did not aim at them, saying that, at one point, he just turned and fired. He said he hoped that the shots would cause confusion. Upon cross-examination, the defendant stated that he had been escaping from institutions since the nineteen-sixties and that, if the same circumstances existed, he would try it again. He, also, stated that he had been making bombs since the nineteen-sixties, as well.

As to several of the issues raised by the defendant, the record is devoid of any evidence to support his allegations. The defendant's motion for new trial alleged that, due to courthouse renovations, the trial was held in a nearby church and that the defendant was delivered to the church in a Department of Correction vehicle, while wearing prison attire, all in the view of jurors who would be sitting on his case. The motion alleged that the defendant, although in civilian attire at trial, was required to wear leg irons during the trial. It asserted that these shackles "together with the number (3 or 4) of uniformed guards immediately about" the defendant's person violated due process. Finally, the motion alleged that the trial court failed to give a limiting instruction regarding the shackling.

The defendant's *pro se* brief contains detailed fact allegations regarding how the defendant was transported to the trial and the circumstances surrounding his being tried with the leg irons. The allegations in his counsel's brief are consistent with those in the motion for new trial, except it is now alleged that the trial was conducted in a Sunday school room and five to seven uniformed guards are alleged to have been in the room.

■■■ Other than the fact that the defendant objected to his wearing leg irons during the trial, none of the allegations regarding the defendant's delivery to trial, the jurors' view thereof and the guards or their number are contained in, or supported by, the record. Matters which are not properly part of the record may not be considered on appeal. *See, e.g., State v. Cooper,* 736 S.W.2d 125, 131 (Tenn.Crim. App.1987); T.R.A.P. 24. Mere statements of counsel, which are not appropriate proffers or not effectively taken as true by the parties, cannot establish what occurred in the trial court unless supported by evidence in the record. *See State v. Max,* 714 S.W.2d 289, 293 (Tenn.Crim.App.1986). Further, no objections appear in the record relative to these matters until the motion for new trial. This failure to object within time to give the trial court an opportunity to prevent or nullify any harmful effect constitutes a waiver. T.R.A.P. 36(a); *see State v. Pilkey,* 776 S.W.2d 943, 952 (Tenn. 1989). In any event, we note that the presence of four uniformed officers did not inherently prejudice the petitioner in *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), which required proof of actual prejudice.

As to the leg irons, the record reflects that the defendant requested their removal during the trial because of the prejudicial

effect on the jury. The trial court refused, stating that it had discussed the matter with the guards who preferred some sort of shackle. Also, the trial court noted that the case involved an escape and the jury would not be surprised by evidence of his incarceration. No hearing was held on the issue.

The defendant relies upon *Willocks v. State*, 546 S.W.2d 819 (Tenn.Crim.App. 1976) in which Judge, now Justice, Daughtrey held that there is a legal presumption against the necessity of in-court physical restraint and that the burden falls upon the state to make a clear showing of the necessity for such restraint. *Willocks* quoted with approval from *Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir.1973) and the ABA Standards Relating to Trial by Jury to the effect that there should be a hearing held upon the issue and that the trial court, in ordering physical restraints, must state its reasons upon the record. Also, the restraints must be the least drastic security measure reasonably to suffice. Further, in such a case, *Willocks* provides that the trial court must give adequate instruction to the jury that the restraint should in no way affect their determination of guilt or lack thereof. *Willocks* concludes by stating that without these safeguards, "in-court shackling is inherently prejudicial to the defendant." 546 S.W.2d at 822.

The concern expressed in *Willocks* relates to an accused's due process right to the presumption of innocence, which necessarily includes the right to the "physical indicia of innocence" at trial. *Kennedy v. Cardwell, supra*, 487 F.2d at 104. Relative to prison clothing being worn at trial, it has been recognized that the constant reminder of the defendant's condition inherent in such clothing may affect a juror's judgment, *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976), and that, upon request by the defendant, the trial court must allow civilian attire and its refusal will constitute plain error. *Carroll v. State*, 532 S.W.2d 934, 935 (Tenn.Crim.App.1975). The reason that the request must be honored is that, by requiring jail clothing, the state furthers no essential purpose or policy which

may legitimately be weighed against the potential prejudice to the defendant. *Estelle v. Williams, supra*, 96 S.Ct. at 93.

On the other hand, even though the presence of physical restraints can be assumed to have significant impact on a jury, it has been recognized that their use can be justified as a necessary measure to prevent escape, to protect those present in the courtroom, and to maintain order during the trial. *See Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Woodards v. Cardwell*, 430 F.2d 978 (6th Cir.1970); *State ex rel. Hall v. Meadows*, 215 Tenn. 668, 389 S.W.2d 256 (1965). Also, the decision, in the first instance, is left to the sound discretion of the trial court. *State ex rel. Hall v. Meadows, supra*.

■ In the review of this case, the significance of *Willocks'* requirements is twofold. First, the trial court neither conducted a hearing nor provided sufficient reason to justify the physical restraint when it denied the defendant's request. Under *Willocks*, this failure by the trial court to make an appropriate record is a procedural error. In this regard, the state seeks to rely upon the evidence at trial to justify the restraint used. Indeed, the defendant's own testimony reflected a history of escape attempts and the case on trial resulted from such an attempt under circumstances which posed a danger to others. In an appropriate case, the state's argument might justify overlooking the trial court's procedural deficiency. Such justification would arise from recognizing that the purpose of having a hearing and stating the reasons for physical restraint is to provide for meaningful appellate review of whether or not the trial court abused its discretion under the facts and circumstances of the case. *See Kennedy v. Cardwell, supra*, 487 F.2d at 107.

However, the state's contention is inappropriate in this case. Although the record reflects the defendant's history of escape attempts, it is totally devoid of any information by which we can assess that the physical restraints used were the *least*

*drastic* security measure to suffice as contemplated by *Willocks.* It should be noted that the record is no more complete for the state than it is for the defendant. We have no way of knowing what security measures were available or contemplated nor does the record reflect the physical environment of the courtroom, the building in which it was housed, or the location and number of the security personnel which could be reasonably used. The fact that the defendant constituted a security risk does not automatically make shackling the least security measure necessary. Thus, we hold that the record does not reflect a clear showing of necessity for the use of leg irons and the trial court's procedural error was not fully obviated.

■ Second, the trial court did not instruct the jury to disregard the leg irons in considering the issues in the case. The state asserts that the defendant waived his complaint by not making such a request. However, the import of *Willocks* is that such a safeguard is fundamental and that, upon the use of shackling, the giving of the instruction should not depend upon the defendant's request. The failure to give the instruction was error.

Therefore, having determined that the procedure used and the failure to instruct were erroneous, we must decide whether the convictions must be reversed given the circumstances in this case. In this regard, the state asserts that the defendant has failed to establish that he was improperly prejudiced at the trial, citing Tenn. R.Crim.P. 52(a), regarding harmless error. Rule 52(a) does not apply. This Court's concern in *Willocks* was premised upon the impact that shackles have on the defendant's right to, and the jury's acceptance and understanding of, the presumption of innocence, which is mandated by due process of law. *Kennedy v. Cardwell, supra.* Thus, the analysis to be used, if any, relates to the standard provided for constitutional error, i.e., harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ A preliminary question of essential importance to this issue, which was not addressed in *Willocks,* is whether or not the constitutional error involved will even allow for an analysis of harm. In *State v. Bobo,* 814 S.W.2d 353 (Tenn.1991), our Supreme Court held that errors affecting the constitutional right to trial by a jury will result in prejudice to the judicial process and require automatic reversal. *Id.* at 358; T.R.A.P. 36(b). It stated, citing *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that violations which are "defects in the structure of the trial mechanism" defy harmless error analysis. 814 S.W.2d at 358. Also, it noted that certain constitutional rights are so basic to a fair trial that their infraction has never been treated as harmless, such as, the right to counsel and the right to an impartial judge. *Id.* at 357.

On the other hand, the United States Supreme Court has indicated that application of harmless error analysis is generally the rule, not the exception. *See United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). In this regard, the failure to instruct a jury as to the presumption of innocence has been held not to be a violation of due process requiring automatic reversal, if the totality of the circumstances reflect that a fair trial was had. *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979).[1] Further, in *Estelle v. Williams, supra,* in which the Supreme Court called the presumption of innocence a "basic component of a fair trial," it was recognized, without criticism, that the wearing of prison clothing had been subjected to harmless error analysis by various courts. 96 S.Ct. at 1694–95. In fact, if the prejudice which *Willocks* attaches to a defendant being tried in shackles was conclusive, then it would seem that due process would be violated whenever shackles are used. Obviously, the allowance of shackles, approved

---

1. In *Whorton,* even the dissent, which believed the instruction to be required by due process, noted that if the error did not affect the outcome of the trial, "failure to give the instruction would be harmless error." 99 S.Ct. at 2091.

in *Willocks*, indicates that the due process right involved is a qualified one which depends upon the circumstances of each case. As a qualified right, it cannot be viewed as a right fundamental to the structure of the trial mechanism. Constitutional harmless error analysis applies.

██ We recognize that, in Tennessee, actual harm is irrelevant to a reversal if the error "would result in prejudice to the judicial process." T.R.A.P. 36(b). Although the examples given by the Advisory Commission Comment to this rule relate to errors which have been held to affect the fundamental, constitutional fair trial process [2], we do not believe the rule is limited only to those of a constitutional nature. *See, e.g., State v. Cook*, 816 S.W.2d 322 (Tenn.1991). However, we do not perceive the errors in this case, flowing from the trial court's procedural omissions, to be of the type which would call for requiring reversal because of prejudice to the judicial process.

Relative to the inherent prejudice determination made in *Willocks*, an understanding of its import is best shown by comparing its facts with those in this case. Willocks was tried in shackles because the trial court had experienced another defendant escaping through a window the day before Willocks' trial. Willocks was being tried for concealing stolen property and there was no evidence that he was a threat to escape. Clearly, this Court in *Willocks* could presume prejudice from such a record. In this case, not only is prejudice not factually shown, any presumption of prejudice is actually rebutted.

Aside from the overwhelming proof introduced by the state, the defendant testified and admitted every fact, without excuse, necessary to convict him of the kidnapping, possession of explosives and attempted escape offenses. Further, the state's proof necessarily entailed the jury knowing that the defendant was a prisoner and attempted to escape. *See United*

*States ex rel. Stahl v. Henderson*, 472 F.2d 556 (5th Cir.), cert. denied, 411 U.S. 971, 93 S.Ct. 2166, 36 L.Ed.2d 694 (1973) (relative to trial in prison garb, the court stated that no prejudice can result from seeing that which is already known.) The defendant explained why he was in prison and that, under similar conditions, he would try to escape again. Finally, the record reflects that the jury acquitted the defendant of assault with intent to commit first degree murder and only found him guilty of the lowest class of felonious assault which exists, Class E. Obviously, the jury accredited his testimony more than it did that of the guards relative to the assault. These circumstances belie the existence of prejudice resulting from the leg irons or from the failure to instruct relative to them.

The circumstances of this case are unique. The record reflects that the defendant was a security risk and, potentially, a danger to others. This, alone, would not make the errors harmless. However, such evidence, when coupled with the evidence in the case, the defendant's testimony, and the jury acquittal of the first degree murder assault charge clearly shows that the failure to determine that the leg irons were the least drastic security measure reasonably available and the failure to instruct the jury to disregard the leg irons were harmless beyond a reasonable doubt. It is the combination of these circumstances which fully rebut the existence of prejudice. The judgment is affirmed.

JONES and PEAY, JJ., concur.

---

2. The Comment states that the concept of prejudice to the judicial process cannot be fully defined, but "it certainly would include situations in which, for example, an accused was denied the effective assistance of counsel, or the decisionmaker was obviously biased, or there was improper discrimination in jury selection."