IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9703-CR-00089 |
| | ) | |
| Appellee | ) | LOUDON COUNTY |
| | ) | |
| v. | ) | HON. E. EUGENE EBLEN, |
| | ) | JUDGE |
| NATHANIEL DAVID BIRCHFIELD, | ) | |
| | ) | Robbery |
| Appellant | ) | |

FOR THE APPELLANT

Mary Katherine Longworth
Suite One, 410 Wharf Street
P.O. Box 501
Loudon, TN 37774

FOR THE APPELLEE

John Knox Walkup
Attorney General & Reporter

Peter M. Coughlan
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

OPINION FILED _____

REVERSED AND REMANDED

JOHN K. BYERS
SENIOR JUDGE

**O P I N I O N**

The defendant was convicted of robbery and sentenced to serve eight years and to pay a fine of $4,000.00[1].

The defendant raises the following issues:

(1) the trial court erred in failing to grant defendant's pretrial motion to vacate and remand or dismiss for failure of the state to record the preliminary examination;
(2) the trial court committed reversible error in forcing defendant to go to trial in leg chains where the state did not show any necessity for chaining defendant during the trial and the jury was not instructed to disregard chains in determining guilt; and
(3) the trial court erred in failing to dismiss counts one and two of the indictment which charged a violation of the definitional statute pertaining to burglary, Tenn. Code Ann. Section 39-14-401.

We reverse this case and remand for a new trial.

On August 11, 1994, the defendant, along with four others who are unidentified, arrived at J. B.'s Country Store at 8:15 to 8:30 p.m. in a pick-up truck. The defendant pumped gas into the truck and he and another person he arrived with entered the store.

The defendant selected two six packs of beer, went to the counter, and gave the clerk a credit card to pay for the gas and beer. The credit card company refused to honor the credit card given by the defendant. The defendant then gave the clerk another credit card which was also refused.

Another employee came to the counter to help deal with this problem. After some discussion between the defendant and the employee, the clerk told the defendant if he did not pay for the purchases the police would be called. The defendant answered if they were going to call the police he would take the beer and go. The defendant then picked up the beer and left the store and got into the truck.

Sarah Sweetwood, the clerk who first dealt with the defendant, followed the defendant to the truck. Ms. Sweetwood testified she went out to obtain the license

---

[1] The jury also found the defendant guilty of an assault arising out of this case, but the trial court dismissed the conviction.

number on the truck. When asked if she wanted to get the beer from the defendant she said she did.

Ms. Sweetwood testified the defendant was in the truck when she got outside and that the defendant got out of the truck and grabbed her by the throat and told her to get back in the store "or else." Ms. Sweetwood entered the store and had no more contact with the defendant. Ms. Sweetwood's neck was severely bruised in this encounter.

A person, who is unidentified in the record, assaulted the defendant after he had assaulted Ms. Sweetwood. The beer was returned to the store by an unidentified person. The defendant came back into the store and again took the beer and went into the parking lot.

The police had arrived at the store by the time the defendant took the beer out the second time and he was arrested.

We will respond to the second issue raised on this appeal first because we believe it to be the only issue which requires a reversal of the conviction.

When the defendant was brought into the courtroom, he was in leg irons. The defendant moved to have the leg irons removed, whereupon the following transpired:

> The State: As Your Honor is aware, and the record reflects, this defendant left the jurisdiction; did not return as he has been ordered and directed to by the Court. Also, I believe we should acknowledge that the defendant is currently facing a homicide charge in the State of North Carolina. He is currently in federal custody -- we have temporary custody of him -- on some prior sentences. And we feel like those matters show that he is a risk. And that's justification, if Your Honor feels so, to leave him in the leg irons.

> The Court: Well under the circumstances, with him failing to appear before, and being under the indictments that he is under, and with his other situation, the Court feels that he has his hands unshackled, and that would not be prejudicial under these circumstances, and probably would be necessary that his feet stay shackled for this trial.

The rule on the use of restraints of an accused during trial is set out very well in the brief of the defendant as follows:

> The rule regarding the use of restraint of an accused during the trial is set forth in Willocks v. State, 546 S.W.2d 819, 820 (Tenn. Crim. App. 1976): "We begin our examination of controlling law by observing that the concept of due process imbedded in our state and federal constitutions guarantees every criminal defendant a fair and impartial trial. Included in the presumption of innocence, which is mandated by due process and which

-3-

attaches in each criminal case, is the defendant's right to the 'physical indicia of innocence.'" Kennedy v. Cardwell, 487 F.2d 101, 104 (6th Cir. 1973), *cert. denied sub nom* Kennedy v. Gray, 416 U.S. 959 (1974), citing United States v. Samuel, 431 F.2d 610, 614 (4th Cir. 1970), *cert. denied* 401 U.S. 946 (1971)." The court added, "The rule that a prisoner brought into court for trial is entitled to appear free from all bonds or shackles is an important component of a fair and impartial trial. And shackles should never be permitted except to prevent the escape of the accused, to protect everyone in the courtroom, and to maintain order during the trial." Willocks, 546 S.W.2d at 820 (citing Woodards v. Cardwell, 430 F.2d 978, 982 (1970), *cert. denied* 401 U.S. 911 (1971). The court continued, "The United States Supreme Court has described such physical restraint as 'something of an affront to the very dignity and decorum of the judicial proceedings that the judge is seeking to uphold' and has approved the use of shackling and gagging only as a 'last resort." Willocks, 546 S.W.2d at 820 (citing Illinois v. Allen, 397 U.S. 337, 344 (1970).

A review of Tennessee law reflects it is in the discretion of the trial court to decide whether to shackle a defendant during trial. Matthews v. State, 77 Tenn. 128 (1882); Poe v. State, 78 Tenn. 673 (1882). Currently a defendant may be shackled during a trial only to prevent his escape. Willocks, 546 S.W.2d 820 (court's cites omitted). Further, the burden falls upon the state to make a clear showing of the necessity for such restraint and *requires an adequate jury instruction that the restraint should in no way affect the determination of guilt or innocence.* State v. Thompson, 832 S.W.2d 577, 580 (Tenn. Crim. App. 1991)(emphasis added). Absent these safeguards, "in-court shackling is inherently prejudicial to the defendant. . . ." Willocks, 546 S.W.2d at 822.

The trial court conducted no hearing on this matter to determine if there was serious likelihood that the defendant would attempt to escape or whether some method, less prejudicial than restraints, of securing the prisoner could have been used. Further, the trial court did not instruct the jury that the restraints should be ignored by them in determining the guilt or innocence of the defendant.

The state argues that there is no evidence that the jury saw the leg irons on the defendant. There is nothing in this record to show that any effort to conceal the shackles was taken. The burden is on the state to furnish an accused a fair trial with proper regard for the preservation of constitutional rights of persons accused of crime. It is the burden of the state to show there was no constitutional deprivation occasioned by the actions of the state. If we accept the state's theory on this issue, we must assume the jury did not see what was there to be seen.

In general, we assume people see or should see what is there to be seen. If we adopt the state's view, a defendant who is shackled in the presence of a jury is caught in the proverbial catch 22 -- the defendant must say nothing and lose an appeal because the record does not show the jury saw the shackles, or the

defendant must bring the shackles to the attention of the jury and then be confronted with a claim the defendant created the error and cannot complain about the effect it had on the jury.

We are unwilling to assume away a constitutional right of an accused in the circumstances here shown.

The state also suggests that a harmless error analysis is appropriate in constitutional violations in the course of a trial. *State v. Thompson,* 832 S.W.2d 577 (Tenn. Crim. App. 1991). In making a harmless error assessment, the strength of the doctrine depends upon the facts of the case. If evidence of guilt is strong or overwhelming, the use of the doctrine is generally acceptable. If the proof of guilt is weak, the use of the doctrine is less justifiable. In applying the doctrine to constitutional issues, the rule is that it must be clear that the constitutional error was harmless beyond a reasonable doubt.

To reconcile the rule with the facts in this case, we point out the testimony of the witnesses is weak on whether robbery was committed in this case.

Ms. Sweetwood testified she went into the parking lot to get the license number from the truck after the defendant left with the beer. The state then asked this leading question, which was not objected to, "Did you want to try to keep him from getting the beer?" She answered, "Yeah, I was going to get the beer from him." A later witness testified Ms. Sweetwood went out to get the license number from the truck. There is in fact a serious jury issue in this case on whether the beer was taken by violence or by putting in fear. Under these circumstances, we are unwilling to apply the harmless error rule to this constitutional error.

The matter of the failure to make available to the defendant a recording of the preliminary hearing as required by Rule 5.1(a) of the Tennessee Rules of Criminal Procedure is a significant issue. The rule should be carefully followed by those officials whose duty it is to ensure a preservation of the due process rights of an accused. However, there is no allegation or showing that the defendant was prejudiced by this failure and we find an error, if any, in this matter is clearly harmless.

-5-

The indictment in this case charging the defendant with robbery erroneously set out citation to Tenn. Code. Ann. § 39-14-401, which refers to burglary rather than robbery. The body of the indictment charges the words necessary to inform the defendant he was accused of robbery. The insertion of the code section appears to be a clerical error. Where the indictment clearly informs the accused of the offense of which he is charged, where it is clear from the indictment that the court has jurisdiction of the case, and where an accused would be protected from a further prosecution on the same facts by reason of the double jeopardy clause of the Constitution, the inadvertent addition of the incorrect statute in the charging instrument does not make the charging instrument void. The erroneous addition in such cases is merely surplusage, and a trial and conviction may be had on such an instrument. *State v. Culp,* 891 S.W.2d 232 (Tenn. Crim. App. 1994).

_____

_____

John K. Byers, Senior Judge

CONCUR:


_____

Gary R. Wade, Judge



_____

Curwood Witt, Judge