IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1997 SESSION

FILED

October 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

ROYCE LEE "DINO" LANE      )
                          )        No. 02C01-9604-CC-00133
            Appellant,     )
                          )        Dyer County
v.                        )
                          )        Honorable Joe G. Riley, Judge
                          )
STATE OF TENNESSEE,        )         (Post-Conviction)
                          )
            Appellee.      )


For the Appellant:                  For the Appellee:

Vanedda Prince                      Charles W. Burson
P.O. Box 26                         Attorney General of Tennessee
Union City, TN 38281                        and
                                    Clinton J. Morgan
                                    Assistant Attorney General of Tennessee
                                    450 James Robertson Parkway
                                    Nashville, TN 37243-0493

                                    C. Phillip Bivens
                                    District Attorney General
                                            and
                                    James E. Lanier
                                    Assistant District Attorney General
                                    113 S. Mill Ave.
                                    P.O. Box E
                                    Dyersburg, TN 38024


OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, Royce Lee "Dino" Lane, appeals as of right from the Dyer County Circuit Court's denial of post-conviction relief after an evidentiary hearing. The petitioner is presently in the Department of Correction serving an effective sentence of twenty-six years for his 1991 convictions for second degree murder, criminally negligent homicide and unlawful possession of a firearm during the commission of the second degree murder. The petitioner contends that he received the ineffective assistance of trial counsel, that his due process rights were violated because the jury was allowed to see him in shackles, and that the reasonable doubt jury instruction allowed the jury to convict him based on a lower standard of proof than is constitutionally required. We affirm the judgment of the trial court.

In 1991, the petitioner was convicted of second degree murder, criminally negligent homicide and unlawful possession of a firearm during the second degree murder. The petitioner was sentenced as a Range I, standard offender to consecutive sentences of twenty-two years, two years and two years, respectively. This court affirmed his conviction. State v. Royce Lee "Dino" Lane, No. 02-C-01-9102-CR-00011, Dyer County (Tenn. Crim. App. Jan. 29, 1992), app. denied (Tenn. May 26, 1992) (concurring in results only).

On April 20, 1995, the petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and the petition was amended. The petition alleges that the petitioner received the ineffective assistance of counsel at trial because counsel failed to conduct a prompt investigation of the facts and interview and subpoena witnesses. It alleges that counsel was ineffective because when he learned that the preliminary hearing tape was inaudible, he failed to secure for impeachment purposes the testimony of Darren Devault, a newspaper reporter who was present at the

2

preliminary hearing. The petition alleges that counsel was ineffective by failing to move to withdraw as petitioner's counsel in order to testify as a witness to the preliminary hearing testimony. The petition claims that trial and appellate counsel were ineffective for failing to preserve and to raise on appeal the issue of whether the petitioner was denied due process of law by being exposed to the jury while wearing shackles. The petition alleges that the reasonable doubt instruction allowed the jury to convict him based on a lesser standard of proof than constitutionally required.

At the post-conviction hearing, Marty Taylor testified that he sat as a juror on the petitioner's case. He stated that he saw the petitioner in shackles but he could not remember the time or the duration that the petitioner was in the shackles. He said that he did not know why the petitioner was in shackles but that it had no bearing on his decision as to the petitioner's guilt or innocence. He stated that he did not believe that the shackles were discussed during deliberations. He did not recall the trial court asking him whether he saw the petitioner in shackles.

Gloria Brady, a juror on the petitioner's case, testified that she believed that she saw the petitioner in shackles. She did not recall the trial court discussing the shackles with the jury. She said that the shackles would not have affected her decision relative to the petitioner's guilt or innocence. She stated that the shackles were not mentioned during deliberation.

Lisa Wheeler testified that she was working as a convenience store clerk in Finley, Tennessee, at the time of the offenses. She stated that she remembered a black man coming into the store at night asking for directions to return to Forrest Street in Dyersburg. She said that the man was drunk and disoriented. She said that the man's pants were torn and his hands and arm had blood on them. She testified that

3

the petitioner's attorney did not contact her about the incident. She stated that she received a letter from the petitioner in 1994 asking her about the incident.

On cross-examination, Ms. Wheeler testified that she could not state for sure that the petitioner was the person she saw that night. On redirect examination, she stated that she connected the incident to the petitioner after reading about the offenses in the paper. She said that she did not report the incident.

The petitioner's trial counsel testified that he could not recall specifically whether the jurors saw the petitioner wearing shackles or whether he objected. He said that the trial court ordinarily placed a box around defense table to shield from the jury's view shackles worn by a defendant. The petitioner's counsel testified that he and his investigator met with the petitioner many times before trial. He said that he called as defense witnesses all of the people requested by the petitioner. He said that he would not have hesitated to contact other witnesses had the petitioner notified him of their existence. He said that the petitioner told him that he had stopped at a convenience store for directions. Counsel could not remember whether he had contacted anyone from the store, but he conceded that he did not interview anyone that worked for a store.

Counsel testified that the petitioner told him that he had sustained an injury to his hand during a fight with Michael Holder, the victim of the criminally negligent homicide. He said that he reviewed the petitioner's medical records. He conceded that he did not depose the petitioner's treating physician, although the medical evidence could have corroborated the petitioner's testimony that he had been injured in a fight with Holder and that the petitioner acted in self-defense.

4

Regarding the preliminary hearing tape, the petitioner's counsel testified that at trial, Bernard Cork testified that he had heard a hostile conversation between the petitioner and Edward Dennis, the second degree murder victim, and that the petitioner told Dennis before shooting him, "You're going to get it, you punk." He said that Cork was a key state witness because he was the only eyewitness of the shooting of Dennis. Counsel testified that he intended to introduce the preliminary hearing tape for impeachment purposes to show that Cork had made a prior inconsistent statement at the preliminary hearing that he had not heard any of the conversation between the petitioner and Dennis. He said that he learned that the tape was inaudible, and he tried to subpoena Darren Devault, a news reporter who was present at the preliminary hearing. He said that Devault had told the petitioner that he remembered Cork testifying at the preliminary hearing that he had not heard any of the conversation. He stated that when he contacted Devault, Devault agreed to come to court and to testify accordingly. Counsel testified that Devault did not testify at trial because he invoked his reporter privilege and the procedure for obtaining his testimony was not followed. He said that given Devault's cooperation, he did not believe it necessary to follow the statutory requirements for securing testimony of a news reporter. He stated that he did not consider withdrawing as the petitioner's counsel in order to testify on his behalf.

Relative to the petitioner's medical records, counsel testified that he questioned the petitioner on direct examination about his injuries. The petitioner testified that on the night of the offenses, he had been in a fight with Holder and had broken his hand when he hit Holder on the head. He said that he broke two knuckles and dislocated a knuckle, requiring that he wear a cast for five weeks. The petitioner was not cross-examined about his injuries.

The petitioner testified that he remembered wearing shackles in front of the jury, but he could not recall at what point it occurred. He conceded that it was not

5

the entire trial. He stated that counsel told him to keep his feet still while he was wearing the shackles. He said that there was no box around the table where he was sitting. The petitioner acknowledged that the two jurors who saw him in shackles stated that it did not have any effect on their guilty verdict.

The petitioner stated that he told his counsel that he had gone to a convenience store after shooting Holder. He conceded that he had told counsel that he did not know the name or the exact location of the store because he was lost and upset. He said that he told counsel that he had asked for directions to get back to Dyersburg to Forrest Street. He stated that he gave to counsel the directions that were given to him by the female clerk at the store. He believed that the store could be located by following the directions in reverse order. The petitioner could not remember the exact directions given to him by the clerk and he could not find the store again. He said that he learned of the name of the store approximately three years after trial when church members visited him in jail. The petitioner testified that he gave his counsel the names of the witnesses that were called to testify in his behalf. Regarding his injuries, the petitioner testified that he told his counsel about the injury to his hand and that he had been treated at Dyersburg Hospital.

Lyman Ingram, the prosecutor at the petitioner's trial, testified that he did not remember much about the petitioner's trial. He conceded that it was possible that the jury saw the petitioner in shackles when the jury returned a verdict because the petitioner was probably shackled during deliberations. He did not remember whether an objection was made regarding the petitioner wearing shackles. He stated that the trial court was generally very conscientious about the issue of the jury seeing a defendant wearing shackles.

6

Wanda Pachall, a court reporter testified that she recorded the trial proceedings. A portion of the tape was played for the court relative to the polling of the jurors regarding whether they saw the petitioner in shackles. The tape reflects that the petitioner was wearing shackles during jury deliberations. During jury deliberations, the jury returned to the courtroom to ask a question. After the jury left the courtroom, the petitioner's counsel advised the trial court that the petitioner was wearing shackles in the presence of the jury. The trial court responded that the issue would be dealt with after the jury rendered its verdict. The tape shows that following the rendering and the acceptance of the verdict, the trial court asked the jurors under oath whether they had seen the petitioner wearing shackles. Initially, no jurors responded affirmatively. When individually questioned, Juror Mark Fair answered "Yes," but stated that neither he nor any other juror discussed it during deliberations. The juror stated that seeing the petitioner in shackles did not affect his decision that the petitioner was guilty of the crimes. Jurors Taylor and Brady responded negatively when asked by the court whether they saw the petitioner in shackles.

At the conclusion of the hearing, the trial court denied post-conviction relief. It concluded that the petitioner had failed to show that he was entitled to post-conviction relief based on a claim of ineffective assistance of counsel. It determined that the petitioner advised counsel that he had been to a convenience store, but the petitioner did not know the name of the store or where the store was located. The trial court held that counsel could not be faulted for failing to discover a potential witness. It determined that counsel's performance was not deficient given the fact that he called approximately fifteen witnesses to testify on behalf of the petitioner and called all potential witnesses suggested by the petitioner.

Relative to the claim of ineffective assistance of counsel for failing to introduce the medical records, the trial court concluded that the petitioner had failed to

establish prejudice because other proof was introduced regarding his hand injury. It determined that the petitioner testified at trial that he had broken his hand during a fight with the victim, and the petitioner's testimony was not contradicted. The trial court held that the petitioner had failed to establish prejudice as a result of trial counsel's failure to obtain the testimony of the news reporter. It determined that the petitioner did not show that the news reporter's testimony would have impeached Cork's testimony. It also held that counsel was not deficient for not moving to withdraw as counsel.

The trial court also held that the petitioner was not entitled to post-conviction relief based on his claim of ineffective assistance of trial and appellate counsel for failing to raise on appeal the claim that the petitioner's due process rights were violated when the jury saw him wearing shackles. It found that while the jury was deliberating, leg restraints were placed on the petitioner. It determined that the jury returned to the courtroom to ask a question, and unknown to the court, the shackles remained on the petitioner. The court stated that when asked under oath, one juror stated that she had seen the petitioner in shackles but that it was not discussed during deliberations and that it had no effect on her guilty verdict. The court held that appellate counsel was not deficient for failing to raise the issue on appeal because the petitioner had failed to show a reasonable probability that the issue would have had merit on appeal.

The court denied post-conviction relief based on the petitioner's claim that the reasonable doubt jury instruction violated his due process rights. It held that the reasonable doubt jury instruction was a proper statement of the law.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel. He argues that counsel provided ineffective assistance by (1) failing to secure

8

the testimony of a news reporter after learning that the preliminary hearing tape was inaudible and failing to withdraw as counsel to testify on the petitioner's behalf, (2) failing to investigate and present evidence that on the night of the shootings, the petitioner stopped at a convenience store to ask for directions, and (3) failing to investigate and to present medical proof of the petitioner's injury to his hand and arm that occurred during an altercation with the victim. The state responds that the petitioner has failed to establish either deficient performance or prejudice. We agree.

The burden was on the petitioner in the trial court to prove by a preponderance of the evidence the factual allegations that would entitle him to relief. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). On appeal, we are bound by the trial court's findings of fact unless the evidence in the record preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

In this respect, when a claim is made of the ineffective assistance of counsel under the Sixth Amendment, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied, as well, to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal

9

cases.  Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973).  Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (counsel's conduct will not be measured by "20-20 hindsight").  Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance.  Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation.  See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

Relative to the claim of ineffective assistance of counsel for failing to investigate and present evidence that the petitioner stopped at a convenience store on the night of the offenses to ask for directions, we hold that counsel's performance was not deficient.  We agree with the trial court's conclusion that counsel cannot be faulted for failing to locate a potential witness when the petitioner could not remember the name of the store, the location of the store, or the directions to the store.

Relative to the remaining claims of ineffective assistance of counsel, we need not determine whether counsel's performance was deficient because the petitioner failed to establish prejudice.  The approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct.  If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance.  Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.  At the post-conviction hearing, the petitioner did not establish that either the news reporter's testimony or the petitioner's counsel's testimony would have impeached Cork's

testimony given at trial.  Thus, no prejudice has been shown.  The petitioner also failed to establish prejudice from counsel's failure to introduce medical evidence of his injuries because evidence of his injuries was introduced through other means, and the evidence was not contradicted.  We conclude that the petitioner did not receive the ineffective assistance of counsel.

## II.  DUE PROCESS VIOLATION

The petitioner asserts that the trial court erred by holding that the exposure of the petitioner to the jury while wearing leg restraints violated his due process rights.  We note that the issue as raised by the petitioner on appeal is subject to waiver because it was not raised on direct appeal.  See T.C.A. § 40-30-112(b)(1) (repealed 1995); House v. State, 911 S.W.2d 705, 714 (Tenn. 1995).  However, the petitioner raised the claim in his petition as one relating to the ineffective assistance of appellate counsel for failing to raise the issue, and the trial court addressed the issue as such.  Therefore, we will also address the issue as a claim relating to the ineffective assistance of appellate counsel.

In Willocks v. State, 546 S.W.2d 819 (Tenn. Crim. App. 1976), this court held that there is a legal presumption against the necessity of in-court physical restraint and that the burden falls on the state to make a clear showing of the necessity for such restraint.  Id. at 821-22.  Shackling is considered inherently prejudicial to the defendant unless there is a clear showing of necessity.  Id. at 822.  In this respect, the trial court (1) should conduct a hearing, (2) must state upon the record its reasons for ordering physical restraints, and (3) must give adequate instructions that the restraint of the defendant should in no way affect their decision.  Id.  Shackles must be the least drastic security measure reasonably to suffice.  Id.  Constitutional harmless error analysis applies when a defendant's due process rights are violated by the use of in-court physical restraints.  State v. Thompson, 832 S.W.2d 577, 582 (Tenn. Crim. App. 1991).

Initially, we note that at the time of the trial, counsel was only made aware of one juror who acknowledged seeing shackles. That juror stated that it was not discussed during deliberations and had no effect upon his individual verdict. Our assessment of counsel's conduct should not be viewed in hindsight in terms of there now being three jurors who say they saw leg restraints on the petitioner. Given what was known to counsel at the time of the trial, we do not believe it was deficient performance not to pursue this issue on appeal.

In this respect, we also agree with the trial court's conclusion that the petitioner failed to show a reasonable probability that the issue would have had merit on appeal. The shackling of the petitioner in the presence of jurors occurred only for a short period of time while the jury was deliberating. When the jury returned to the courtroom to ask a question, one to three jurors saw the petitioner wearing leg restraints. However, each juror stated under oath that the physical restraints were not discussed during jury deliberation, and each juror said that the shackling did not affect his or her individual decision regarding the guilt of the petitioner. Under all of the circumstances existing at the time of the trial and presently, we conclude that the juror or jurors viewing the petitioner shackled for a short period of time while the jury was deliberating was harmless beyond a reasonable doubt. We conclude that the petitioner did not receive the ineffective assistance of counsel by counsel's failure to raise the issue on appeal.

### III. REASONABLE DOUBT JURY INSTRUCTION

The petitioner asserts that the reasonable doubt instruction given by the trial court allowed the jury to convict him based upon less proof than constitutionally required. The trial court gave the following reasonable doubt instruction at the petitioner's trial:

> The state has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden never shifts but remains on the state throughout the trial of the case. The defendant is not required to prove his innocence.

12

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a captious, possible, or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required as to every proposition requisite to constitute the offense.

See T.P.I. - Crim. 2.03 (3d ed.). This is a correct statement of the burden of proof required for criminal trials in Tennessee. See Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105 (1962); Nichols v. State, 877 S.W.2d 722, 734 (Tenn. 1994); State v. Sexton, 917 S.W.2d 263, 266 (Tenn. Crim. App. 1995); Pettyjohn v. State, 885 S.W.2d 364, 366 (Tenn. Crim. App. 1994). Therefore, the instruction was properly given, and the use of the instruction did not violate the petitioner's due process rights.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David G. Hayes, Judge


_____
William M. Barker, Special Judge

13