IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 24, 2014 Session

## LEON WILLIAMS v. JANNIE WILLIAMS

**Appeal from the Circuit Court for Davidson County**
**No. 11D579      Philip E. Smith, Judge**

**No. M2013-01910-COA-R3-CV - Filed January 30, 2015**

In this post-divorce proceeding, Wife filed a petition for civil contempt to compel Husband to comply with the parties' marital dissolution agreement ("MDA") by either refinancing, paying in full, or selling real property mortgaged in her name in order to remove her from any liability on the indebtedness. Husband responded by filing a series of petitions for contempt, contending, inter alia, breach of the duty of good faith and fair dealing, unclean hands, breach of contract, and abuse of process for Wife's alleged failure under the MDA to execute certain documents which would have facilitated Husband's "assumption" of the existing mortgage. On the eve of the evidentiary hearing on Wife's petition for contempt, Husband paid off the indebtedness. At the hearing that followed, the trial court ruled that the issue of Husband's civil contempt was moot due to the fact that he belatedly complied with the MDA; nevertheless, the court also ruled that Wife was entitled to recover her reasonable attorney's fees, pursuant to the enforcement provision of the MDA, because she was the prevailing party. The enforcement provision of the MDA states: "In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, the prevailing party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action." Husband appeals contending Wife was not the prevailing party because there was never a ruling on the merits of her claim, and, therefore, she is not entitled to recover any of her attorney's fees; he also challenges numerous other rulings by the trial court. For her part, Wife seeks all of her attorney's fees incurred in the trial court, as well as attorney's fees related to this appeal. We affirm the trial court's determination that Wife was the prevailing party because, as the trial court correctly found, it was reasonably necessary for Wife to institute legal proceedings to enforce Husband's compliance with the MDA, and even though there was no hearing or ruling on the merits of her enforcement claim, "but for" Wife's petition, Husband would not have fulfilled his obligation under the MDA to remove Wife from all liability on the mortgage debt. *See Fannon v. City of LaFollette*, 329 S.W.3d 418 (Tenn. 2010). We also affirm the trial court's discretionary decision to award Wife a portion of her attorney's fees.

As for Husband's remaining issues, we find that these are moot or they have been waived. Finally, we have determined that Wife is entitled to her attorney's fees on appeal because she is the prevailing party on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, J., joined. W. NEAL MCBRAYER, J., filed a dissenting opinion.

Leon Vincent Williams, Nashville, Tennessee, Pro se.

Mike J. Urquhart, Nashville, Tennessee, for the appellee, Jannie Olivia Williams.

**OPINION**

On May 15, 2012, Leon Williams ("Husband") and Jannie Williams ("Wife") executed an MDA as part of their divorce proceeding, which was subsequently approved by the court and entered as part of their final divorce decree.

Under the relevant terms of the MDA, Wife was awarded numerous assets and Husband was awarded, inter alia, real property located at 2715-2717 Old Matthews Road, Nashville, Tennessee, that had been purchased by Wife, solely in her name. Due to the fact the property was encumbered by a mortgage for which Wife was liable, Husband was required to satisfy the indebtedness so that she would no longer be liable on the mortgage. Husband's obligations to satisfy the indebtedness were set for in paragraph 3(C)(ii) of the MDA, which states:

> Husband shall refinance the debt, or pay the debt in full, on these properties within ninety (90) days of executing this agreement, so as to remove Wife from all liability on the debt, and shall indemnify and hold Wife harmless on the debt pending refinancing. Should the Husband be unable to refinance the property, the residence shall be listed for sale within 90 days. Pending the refinancing or sale of the property, the Husband shall provide proof of his monthly timely payments on the mortgage to the Wife.

Because Wife was divested of any right, title, or interest in the property and "all interest shall vest solely in the Husband," Wife was required to execute a quitclaim deed conveying her interest in the property to Husband. The executed deed was to be held in escrow pending the sale or refinancing of the property.

Due to the fact that Husband failed to comply with the MDA by failing to pay the debt or listing the property for sale, Wife filed a motion to enforce the MDA on October 3, 2012. Husband filed a response and a separate competing motion to enforce the MDA, insisting Wife was required to sign documentation which would permit Husband to "assume" the existing mortgage, including, but not limited to, authorizations to release financial information and permitting communication with the mortgagee-bank. Husband also asked the trial court to extend his time to comply with the MDA until 90 days after Wife signed these documents.

Although the record lacks a written order from this hearing, the parties have represented to this court that the two motions came on for hearing on November 12, 2012, at which time, upon the suggestion of the trial court, Husband and Wife agreed that, in lieu of hearing the competing motions to enforce, the parties would file respective petitions for civil contempt.

One month later, on December 12, 2012, Wife filed a petition for contempt for Husband's non-compliance with paragraph 3 of the MDA contending, inter alia, that Husband was attempting to assume the mortgage, rather than satisfying the debt for which Wife was liable as the MDA required. She also sought to recover her attorney's fees under paragraph 19, the enforcement provision of the MDA, which states:

19. ENFORCEMENT - In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, the prevailing party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

One week later, on December 21, 2012, instead of filing a response to Wife's petition, Husband filed the first of four petitions for contempt. He asserted that Wife was obliged under the MDA to act cooperatively and to execute any and all documents necessary to implement the agreement, and that she was intentionally interfering with his ability to refinance the mortgage on the Old Matthews property. He requested an extension of time within which to perform "any duty with respect to the sale of the property until [Husband] has 90 days free of interference and harassment by [Wife]." Wife filed a response to Husband's petition, contending Husband's efforts to "assume" the mortgage was in violation of his obligation under paragraph 3 of the MDA; instead of "assuming" the existing mortgage for which Wife was liable, she insisted that Husband was required to pay off the loan.

Husband filed a second petition for contempt, two weeks after filing his first petition, in which he added Wife's attorneys as parties; Husband alleged Wife's attorneys were also

in contempt because they were assisting Wife as she continued to "interfere" and "harass" him by refusing to execute the documents for an assumption. Husband also asserted in this petition that Wife had actual or constructive knowledge that the Old Matthews property had been listed for sale prior to the filing of her petition for contempt in October 2012. Husband also requested the trial court to permit him to remove the present listing of the property and to grant him an extension of 90 days after Wife's execution of the assumption authorizations and disclosure to re-list the property for sale.

The trial court denied Husband's first petition for contempt on January 14, 2013, and set a hearing for his second petition for the following month. Wife's attorneys then filed a motion seeking sanctions pursuant to Tenn. R. Civ. P. 11 against Husband for asserting claims against them in the second contempt petition. A few days later, Husband filed an amended petition for contempt on January 29, 2013, in which he redacted Wife's attorneys from the petition and added allegations that Wife was in breach of the duty of good faith and fair dealing.

The trial court heard the motion for Rule 11 sanctions on February 15, 2013, at which time the court ruled that the motion was well-taken, except for the fact it was untimely filed within the Rule's safe harbor provision; accordingly, the court denied the Rule 11 motion. The court also dismissed Husband's second petition and subsequent amended petitions for contempt in their entirety, with leave to file a new petition.

Husband filed his fourth petition for civil contempt against Wife on April 15, 2013, with substantially similar allegations, except for additionally alleging breach of contract and abuse of process. As before, Husband again asked the court to extend his time to comply with the MDA to 90 days after Wife executed the authorizations and disclosures requested by Husband.

On May 10, 2013, one year after the MDA was executed and seven months after Wife commenced these proceedings to compel Husband to pay off the mortgage, Husband filed his response to Wife's December 2012 petition for contempt. He reasserted therein his allegations that Wife had stymied his efforts to refinance the mortgage; requested an extension of time to comply with the terms of the MDA; argued that Wife had unclean hands due to her "intentional interference" with his efforts to refinance; and asked for dismissal, arguing that he had listed the property for sale on November 27, 2012, or approximately two weeks before Wife filed her petition.

On May 20, 2013, Husband filed a motion to dismiss Wife's petition for contempt on the grounds that the petition lacked specificity, did not give him adequate notice, and that he had listed the property for sale. Within days of filing his motion to dismiss Wife's petition,

and within a week of the hearing on Wife's petition to hold Husband in contempt, Husband paid off the indebtedness in full, and, as a result, Husband finally complied with the MDA.

The parties announced this development to the trial court at the hearing on May 30, 2013. The trial court took the matter under advisement and subsequently ruled that the issue of contempt was "now moot in that Leon Vincent Williams, the former husband, has paid the debt in full on the real property." The trial court's written order provided in pertinent part:

> Notwithstanding the Court finding that the issue of civil contempt is now moot, the Court further finds that Civil Contempt is a form or cause of action which is brought to compel the performance of an act or obligation that the party is already under Order to do. Once the act is performed, they have purged themselves of the obligation and the case law is clear that the issue of contempt is moot at that point. However, the Court finds that in light of the circumstances of this case, it was necessary and reasonable for [Wife] to file this petition as a means of enforcing the payoff of the debt on the real property located at 2715-2717 Old Matthews Road.
>
> Further, the Court finds that Paragraph 19 of the Marital Dissolution Agreement which was incorporated into the Final Decree of Divorce gives recourse for attorney's fees incurred as a result of seeking enforcement of any of the provisions of the Marital Dissolution Agreement.

After reviewing the enforcement provision of the MDA and the affidavit of attorney's fees submitted by Wife in which she was seeking $8,637.50, the court determined that Wife was the prevailing party and that Husband should pay $4,000 of her fees; a judgment in favor of Wife was entered on July 19, 2013.[1] This appeal by Husband followed.

After the notice of appeal was filed, a dispute arose concerning the evidentiary record due to the fact that neither party retained a court reporter; thus, a verbatim transcript of the evidence was not available, and the parties did not agree on the proposed statement of the evidence. After requesting the parties to submit proposed statements of the evidence, the trial court prepared its own statement of the evidence, which was entered on February 5, 2014. The statement of the evidence approved by the trial court, which neither party challenged in the trial court, states in pertinent part:

---

[1]One week after the trial court ruled on all pending issues, Husband filed yet another petition for contempt against Wife; however, Husband voluntarily dismissed this petition, the only remaining petition for contempt, and the order to that effect was entered on August 30, 2013.

Based on the Court's review of the record, affidavits, and statements of counsel, the Court found that ***but for*** the Petitioner's filing of the Petition for Civil Contempt, Respondent would not have adhered to the terms of the Marital Dissolution Agreement.

Therefore, the Court found [Wife's] Petition for Civil Contempt necessary and reasonable as a means of enforcing the payoff of the debt on the real property located at 2715-2717 Old Mathews Road, Nashville, Tennessee. The Court further found counsel for [Wife], Mike J. Urquhart, filed an affidavit for attorney's fees in this matter. The Court found Mr. Urquhart's hourly rate was reasonable and customary, and so found that [Husband] should pay the sum of $4,000.00 towards [Wife's] attorney's fees in this matter.

(Emphasis in original).

## ANALYSIS

Husband has identified the following ten issues for appellate review in his "Statement of Issues":

I. The trial court's final order should be reversed when the uncontroverted evidence and statements against interest showed that Wife should have been found in contempt.

II. The trial court's final order should be reversed when Wife had unclean hands, because she refused to vest the property rights and interests to relieve her liability in Husband in accordance with the final decree of divorce and MDA.

III. The trial court's order should be reversed when Wife breached the MDA by refusing to transfer to Husband her beneficial interests in the deed of trust and interfered directly or indirectly.

IV. Whether the trial court's order should be reversed when the court did not consider and grant the Husband's motion for extension of time for performance when the opposing party was not prejudiced.

V. Whether the trial court abused its discretion when it failed to grant the Husband's motion to dismiss and hold that the Husband was the prevailing party entitled to attorney's fees, when the uncontested and uncontroverted

-6-

evidence in the record were the affidavits and exhibits of the Husband and the Wife's statements against interest showing that the Husband should be the prevailing party.

VI. The trial court's order should be reversed when there was no testimony or evidence that proved by a preponderance of the evidence that the Husband was or would have been in contempt from which he purged or needed to purge himself or that the Husband breached the MDA.

VII. The trial court's order should be reversed because the Wife is estopped.

VIII. The trial court erred when it failed to bar the Wife's claims when the Wife did not have clean hands, would not cooperate and frustrated and opposed Husband's efforts to relieve her of the mortgage indebtedness to which she complains.

IX. The trial court's order should be reversed when the Wife was the first to breach the MDA.

X. Whether extraordinary circumstances exist for disregarding those portions of the trial court's "Statement of Evidence" which add unsupported legal conclusions.[2]

Realizing that our analysis of many of the issues presented by Husband depends on factual determinations by the trial court, we shall first determine whether the statement of the evidence provides a record which conveys a fair, accurate, and complete account of what has transpired in the trial court with respect to the issues raised. *See* Tenn. R. App. P. 24; *see also In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005); *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Ct. Crim. App. 1992)

---

[2] In addition to the issues identified above, Husband attempts to assert additional grounds for reversal, including waiver and Wife's breach of the duty of good faith and fair dealing, without properly identifying them as issues for this court to consider in this appeal pursuant to Tenn. R. App. P. 27(a)(4); Husband merely addresses them within the text of his argument. Additionally, Tenn. R. App. P. 13(b) states clearly that "[r]eview generally will extend only to those issues presented for review." Thus, "[a]ppellate review is generally limited to the issues that have been presented for review." *Hodge v. Craig*, 382 S.W.3d 325, 334-35 (Tenn. 2012) (citing Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007)).

# I. THE STATEMENT OF THE EVIDENCE

It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what has transpired in the trial court with respect to the issues that form the basis of the appeal. Tenn. R. App. P. 24(a); *see also State v. Boling*, 840 S.W.2d at 951. "Mere statements of counsel, which are not appropriate proffers or not effectively taken as true by the parties, cannot establish what occurred in the trial court unless supported by evidence in the record." *State v. Thompson*, 832 S.W.2d 577, 579 (Tenn. Ct. Crim. App. 1991); *see In re B.N.W.*, No. M2004-02710-COA-R3-JV, 2005 WL 3487792, at *1 (Tenn. Ct. App. Dec. 20, 2005). Therefore, to the extent that the resolution of any issue on appeal depends on factual determinations, the lack of a transcript or statement of the evidence is essentially fatal to the party having the burden on appeal. *See Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) (holding that without an appellate record containing the facts, the court must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings). As we further explained in *Outdoor Mgmt., LLC v. Thomas*:

> It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment. *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977). The burden is upon the appellant to show that the evidence preponderates against the judgment of the trial court. *Capital City Bank v. Baker*, 442 S.W.2d 259, 266 (Tenn. Ct. App. 1969). The burden is likewise on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence from which this Court can determine if the evidence does preponderate for or against the findings of the trial court.

*Id.*, 249 S.W.3d 368, 377-78 (Tenn. Ct. App. 2007).

The record before this court does not include a verbatim transcript of the evidence contemplated by Tenn. R. App. P. 24(b). Moreover, the statement of the evidence that was filed pursuant to Tenn. R. App. P. 24(c) is less than three pages, and it provides little evidence that pertains to many of the issues raised by Husband.

Surprisingly, Husband, who had the burden to provide a record which conveys a fair, accurate, and complete account of what has transpired in the trial court with respect to the issues that form the basis of the appeal, fails to explain why the statement of the evidence is so deficient. Further, and ironically, he affirmatively states that the statement of the evidence "is neither a complete nor a narrative statement of the evidence." We are in total agreement

with the deficiencies of the statement of the evidence; therefore, Husband has failed to provide a record of the evidence from which we can determine if the evidence does preponderate for or against the findings of the trial court. In the absence of an evidentiary record, we are bound by the conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment. *See Thomas*, 249 S.W.3d at 377-78; *see also McKinney*, 569 S.W.2d at 832.

The foregoing deficiencies in the statement of the evidence notwithstanding, we shall address Husband's Issue X in which he contends we should "disregard" those portions of the statement of the evidence that add "unsupported legal conclusions" because "extraordinary circumstances" exist.

Situations which may constitute such "extraordinary circumstances" include the death of the trial judge or evidence of bias. *See Artrip v. Crilley*, 688 S.W.2d 451, 453 (Tenn. Ct. App. 1985). Neither of these circumstances are at issue here; nevertheless, Husband contends extraordinary circumstances exist because the statement of the evidence is neither a complete nor a narrative statement of the evidence, and it attempts to restate the order on appeal which is beyond the trial court's jurisdiction. For the reasons explained below, we find no merit to this contention, and we have also determined that Husband waived this issue by failing to challenge the correctness or sufficiency of the statement of the evidence in the trial court.

Husband cited no legal authority to support his contention that either of these circumstances were extraordinary in the context of Tenn. R. App. P. 24(c).[3] The only authority he relies on in his brief to contend that we should disregard the statement of the evidence is Tenn. R. App. P. 24(e), which states: "Absent extraordinary circumstances, the determination of the trial court is conclusive." Tenn. R. App. P. 24(e).[4] Husband identifies no authorities to support his contention that a *narrative* statement of the evidence or a statement of the evidence which is not *complete* constitutes an extraordinary circumstance.

---

[3]"An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7). *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (internal citations omitted); *see also* Tenn. R. App. P. 27.

[4]Tennessee Rule of Appellate Procedure 24(e) provides:

If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive.

Further, Husband cites no authority to support his contention that the trial court exceeded it's jurisdiction by including the reasons for its rulings in the statement of the evidence. We, therefore, find no merit to these contentions.

We have also determined that Husband waived any objections he may have to the content of the statement of the evidence approved by the trial court because Husband failed to object to the statement of the evidence approved by the trial court. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991) (in which the court concluded the appellant was attempting to raise an issue for the first time on appeal because he had failed to make a motion or objection at the trial court level); *see also Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983) (stating it has long been the general rule that questions not raised in the trial court will not be entertained for the first time on appeal). We base this conclusion on the fact that there is nothing in the record to indicate that Husband made an objection in the trial court to the statement of the evidence approved by the trial court on February 5, 2014.

Any question as to the accuracy of a transcript or statement of the evidence is to be submitted to and settled by the trial court, whose determination is conclusive. Tenn. R. App. P. 24(c), (e); *Hall v. Hall*, 772 S.W.2d 432, 435 (Tenn. Ct. App. 1989). Resolution of such questions regarding the content of the record, including the statement of the evidence, lies within the exclusive domain of the trial judge, absent extraordinary circumstances. *See Artrip*, 688 S.W.2d at 453; *Parker*, 1996 WL 557816, at *3. The record reveals that Husband submitted a proposed statement of the evidence in November 2013, to which Wife filed objections and, during a December 6, 2013 hearing on Wife's objections, the trial court afforded both parties the opportunity to file proposed changes to the statement of the evidence. Specifically, Husband had until December 13, 2013, to amend his statement of the evidence, and Wife had until December 30, 2013, to file her objections or her proposed statement of the evidence. There is, however, no indication in this record that Husband filed a revised statement of the evidence,[5] and more importantly, there is no indication that Husband objected to the statement of the evidence authored by the trial court, which was entered on February 5, 2014. Therefore, he did not bring to the attention of the trial court his objections to the statement of the evidence in this record.

_____

[5]Pursuant to the order that flowed from the December 6, 2013 hearing, Husband was granted additional time to submit modifications to his statement of the evidence, after which Wife could submit any objections to Husband's modified statement to the trial court for consideration along with her proposed statement of the evidence. In his appellate brief, Husband states that both parties acted in accordance with this order, filing respective statements of the evidence, as well as objections, but that the court opted to author its own statement of evidence. However, none of these documents are included in the appellate record.

-10-

It is a well-established principle that if an issue is not properly raised in the trial court, it cannot be raised for the first time on appeal. *Barnhill*, 826 S.W.2d at 458; *Lawrence*, 655 S.W.2d at 929. Therefore, Husband's issues concerning the statement of the evidence are waived. *Id.*

## II. Issues That are Moot

For the reasons explained below, we have also determined that all other issues, with the exception of the award of attorney's fees to the prevailing party pursuant to the enforcement provision of the MDA, are moot and/or they have been waived by Husband.

A moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005) (citing *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996)). A case is moot if it no longer serves as a means to provide some sort of relief. *Locke v. Estate of Rose*, No. M2012-01314-COA-R3-CV, 2014 WL 2999739, at *11 (Tenn. Ct. App. June 30, 2014); *Fisher v. Rutherford Cnty. Reg'l Planning Comm'n*, No. M2012-01397-COA-R3-CV, 2013 WL 2382300, at *2 (Tenn. Ct. App. May 29, 2013). Determining whether a case is moot is a question of law. *Hurd v. Flores*, 221 S.W.3d 14, 30-31 (Tenn. Ct. App. 2006) (citing *Charter Lakeside Behavioral Health Sys. v. Tenn. Health Facilities Comm'n*, No. M1998-00985-COA-R3-CV, 2001 WL 72342, at *5 (Tenn. Ct. App. Jan. 30, 2001)).

A few days before the evidentiary hearing on Wife's petition to hold Husband in civil contempt, Husband paid the indebtedness in full as he was required to do under paragraph 3 of the MDA. As a consequence, all of Husband's issues that pertain to his requests for extensions of time to comply with the MDA are moot for there is no relief we can grant him. *See Fisher*, 2013 WL 2382300, at *2. Furthermore, by satisfying the debt for which Wife had been liable, Husband was in compliance with the MDA. Therefore, once he complied with paragraph 3(C)(ii) of the MDA, Husband could not be held in civil contempt,[6] and issues concerning whether Wife was estopped to compel Husband to pay off the debt were moot.

---

[6]This is due to the distinct differences between civil contempt, which is at issue here, and criminal contempt, which is not at issue here. The purpose of civil contempt is to compel performance of a court order for the benefit of a private party. *See, e.g.*, *Doe v. Bd. of Prof. Resp. of the Sup. Ct. of Tenn.*, 104 S.W.3d 465, 474 (Tenn. 2003). In contrast, the purpose of criminal contempt is to imprison or fine an individual as punishment for contemptuous conduct to "preserve the power and vindicate the dignity and authority of the law," as well as to preserve the court "as an organ of society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996).

-11-

In a civil contempt proceeding, when a private party seeks to compel compliance with a court order due to the alleged contemnor's failure to perform an act that he was ordered to perform, "the person may be imprisoned *until such person performs it.*" Tenn. Code Ann. § 29-9-104 (emphasis added). Thus, Husband was at risk of being imprisoned *until* he performed as ordered, that being until he paid off the indebtedness in full as required under the MDA. Husband paid off the mortgage; therefore, he performed as required by the court's order, the MDA. As a consequence, Husband was no longer at risk of being held in civil contempt for not paying off the indebtedness, because the court cannot compel Husband to perform an act that has been fully performed, even if it is belated.

As for Husband's contentions that Wife should have been held in civil contempt, these issues are moot because there is no act the court can compel Wife to perform. Stated another way, Wife cannot be held in civil contempt for impeding Husband's ability to perform an act he has already performed. Therefore, all of Husband's issues that are related to Wife's alleged failure to perform that are required by the MDA are moot for there is no relief we can grant. *See Fisher*, 2013 WL 2382300, at *2.

Based upon the foregoing, we have determined that the only justiciable issues that remain pertain to the award of attorney's fees and, specifically, paragraph 19, the enforcement provision of the MDA. More specifically, those issues are whether it was reasonably necessary for Wife to institute legal proceedings to enforce Husband's obligation under paragraph 3(C)(ii) of the MDA to "refinance the debt, or pay the debt in full, . . . within ninety (90) days of executing [the MDA], so as to remove Wife from all liability on the debt," and, if so, whether she was the "prevailing party" pursuant to paragraph 19, the enforcement provision of the MDA. If the answer to both of these questions is yes, then the there is one additional issue, the amount of Wife's attorney's fees and costs she is entitled to recover in the trial court and on appeal.

III. THE ENFORCEMENT PROVISION OF THE MDA

Paragraph 19 of the MDA provides that in the event Husband or Wife find it reasonably necessary to institute legal proceedings to enforce any provision of the MDA, the "prevailing party" in such action shall be paid reasonable attorney's fees and costs incurred in litigating such action. Pursuant to this provision, the trial court found that it was reasonably necessary for Wife to file her petition for contempt and that she was the "prevailing party." Thereafter, the court awarded her $4,000 in attorney's fees. The relevant portion of the statement of the evidence reads: "Based on the Court's review of the record, affidavits, and statements of counsel, the Court found that **but for** the Petitioner's filing of the Petition for Civil Contempt, Respondent would not have adhered to the terms of the Marital Dissolution Agreement." (Emphasis in original).

Husband contends the trial court erred in interpreting paragraph 19 of the MDA. He first argues that the trial court order should be reversed, because it was not reasonably necessary for Wife to file her petition for contempt as he had already listed the property for sale as required by the MDA. Second, he contends that Wife is not the "prevailing party," since there was no evidentiary hearing on the merits of the contempt petition or any finding by the trial court that he was in contempt. For her part, Wife contends the trial court properly found she was entitled to her attorney's fees and costs under paragraph 19. She argues it was necessary for her to file her petition because Husband had failed to comply with the MDA, and contrary to the MDA, he was continuing to insist on an assumption of the mortgage, which left her obligated on the mortgage. She further contends that she was the "prevailing party" because, as the trial court correctly stated, "but for" Wife's petition, Husband would not have complied with the MDA.

We note at the outset that Tennessee adheres to the "American Rule," which provides that, absent a statute of agreement to the contrary, litigants are responsible for their own attorney's fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)); *see also J & B Investments, LLC v. Surti*, 258 S.W.3d 127, 138 (Tenn. Ct. App. 2007). Our courts have consistently held that marital dissolution agreements are a contract between parties contemplating divorce. *See, e.g.*, *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998) (citing *Towner v. Towner*, 858 S.W.2d 888, 890-91 (Tenn. 1993)); *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). After a divorce decree becomes final, a marital dissolution agreement becomes merged into the decree; however, the agreement, as a property settlement agreement, does not lose its contractual nature by merger into the decree of divorce and is not subject to later modification by the trial court. *Gallimore v. Gallimore*, No. W2008-00856-COA-R3-CV, 2009 WL 856991, at *4 (Tenn. Ct. App. Apr. 2, 2009); *Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007).

As noted above, the MDA included an express provision for the payment of attorney's fees to the prevailing party in any action that was reasonably necessary to enforce the MDA. Thus, this case involves one of the recognized exceptions to the American Rule. The question before us, therefore, is whether the MDA's attorney fees provision applies under the facts of this case.

Courts should enforce provisions in contracts that expressly allow a party to recover its attorney's fees incurred in disputes over the contract. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985); *Pinney v. Tarpley*, 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984). The entitlement to recover attorney's fees, however, is limited to the situation agreed to by the parties in the contract, and the fee provision is subject to the rules

of contract interpretation. *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at *27 (Tenn. Ct. App. July 31, 2013); *Clark v. Rhea*, No. M2002-02717-COA-R3-CV, 2004 WL 63476, at *2-3 (Tenn. Ct. App. Jan.13, 2004). The interpretation of a contract is a question of law and not of fact. *Id.*; *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). We accordingly review the trial court's conclusions as to the provisions of the MDA, such as paragraphs 3 and 19, de novo, with no presumption of correctness accorded to those conclusions. *See RCK Joint Venture v. Garrison Cove Homeowners Ass'n.*, No. M2013-00630-COA-R3-CV, 2014 WL 1632147, at *4 (Tenn. Ct. App. Apr. 22, 2014) (citing *Epperson*, 284 S.W.3d at 308; *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993)).

Paragraph 3 of the MDA mandates that Husband refinance the debt on the Old Matthews property or pay the debt in full within 90 days of execution of the MDA "so as to remove [Wife] from all liability on the debt." Alternatively, the property was to be listed for sale. The deadline expired on August 14, 2012, and the record reflects that Husband had taken no action by the deadline to comply with this provision of the MDA.[7]

Rather than refinancing or otherwise paying off the mortgage, either of which would have complied with the MDA because Wife would no longer be liable on the debt, Husband requested that Wife execute documentation and/or authorizations to permit Husband to assume the existing mortgage. Under such arrangement, Husband would have become the principal debtor, but Wife would have remained indebted, which is contrary to the clear mandate in the MDA. *See, e.g.*, *Joiner v. Girod*, No. 85-124-II, 1985 WL 4911, at *5 (Tenn. Ct. App. Dec. 31, 1985) (citing *Wright v. Bank of Chattanooga*, 57 S.W.2d 800, 801 (Tenn. 1933) (explaining liability under an assumption).

Due to Husband's non-compliance with paragraph 3 of the MDA, Wife filed a motion to enforce the MDA on October 3, 2012, but at the trial court's directive, she additionally filed a petition for civil contempt. The petition was filed on December 12, 2012, at which time Husband was still in violation of the MDA. In Husband's response to Wife's petition, as well as on appeal, Husband argues that the petition was unnecessary because he listed the property for sale on November 27, 2012. We note, however, that this occurred more than 180 days after the MDA went into effect and almost two months after Wife filed her motion to enforce the MDA. We are also mindful of the fact that Husband is a seasoned attorney who

---

[7] Husband disputes the deadline required by the MDA, arguing that he had an additional 90 days from August 14, 2012, or to November 12, 2012, to comply with the MDA. It is undisputed that Husband did not comply with the MDA by either date; thus, this contention is of no consequence.

has an active real estate practice; thus, his failure to list the property for sale or otherwise comply with paragraph 3 for more than six months following the trial court's approval of the MDA is inexcusable.

Not only was Husband well past the deadline for compliance when he listed the property for sale, his non-compliance with the MDA continued thereafter for he persisted in his efforts to assume, instead of extinguish, the existing mortgage. It was not until yet another six months had passed, specifically not until May 2013, which was one year since the MDA went into effect, that Husband complied with paragraph 3, which he did by simply paying off the mortgage in full, and without having to refinance the debt. Thus, Wife was not "removed from *all* liability" on the mortgage, as directed by the MDA, until a year had passed since the execution of the MDA, and eight months since Wife filed the motion to compel Husband to comply with the MDA.

An act of contempt is an intentional act that hinders, delays, or obstructs the court's administration of justice. *Luplow v. Luplow*, __ S.W.3d __, No. M2013-01399-COA-R3-CV, 2014 WL 2841076, at *10 (Tenn. Ct. App. June 19, 2014) (citing *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000)). An action for civil contempt is designed to coerce compliance with a court's order. *See Wilkinson v. Wilkinson*, No. W2012-00509-COA-R3-CV, 2013 WL 614708, at *5 (Tenn. Ct. App. Feb. 19, 2013). Persons who have failed to make payments required by a court order may be held to be in civil contempt if the court concludes, by a preponderance of the evidence, that they have not made the payments even though they have the present ability to do so. *Doe*, 104 S.W.3d at 474.

Husband insisted at oral argument that Wife was never at risk on the mortgage because he had the financial ability at all relevant times to satisfy the mortgage in its entirety. We find this ironic in that Husband, by making this statement, admitted that he had the ability to comply with the MDA yet he failed to comply. As a consequence, his failure to comply with the MDA was willful and, therefore, contemptuous.

We next turn to Husband's contention that Wife was not the prevailing party, and, thus, she is not entitled to any attorney's fees. The MDA does not define the term "prevailing party," therefore, we must examine relevant authorities for guidance.

The most relevant and persuasive authority on this issue is set forth in *Fannon v. City of LaFollette*, 329 S.W.3d 418 (Tenn. 2010), wherein Mr. Fannon, the plaintiff and a member of the LaFollette City Council, filed a declaratory judgment action against the city and other council members to enforce a provision of the city's charter. The relevant provisions of the City Charter required that the City Council only exercise its powers at "public" meetings, and that the City Administrator was required to review and approve proposed amendments to the

budget *prior to* council vote. *Id*. at 421-22. On June 28, 2007, the City Council approved a motion that amended the budget to award pay raises, with Mr. Fannon as the sole dissenting vote. *Id*. Thereafter, Mr. Fannon learned that other council members held a private meeting regarding the issue prior to the June 28 council meeting; he also learned that the City Administrator had not reviewed nor approved the proposed budget amendment. *Id*.

In his complaint, Mr. Fannon alleged that the private meeting of council members was in violation of the Tennessee Open Meetings Act and sought to declare void the resolution that amended the budget. *Id*. Mr. Fannon also filed a motion for temporary restraining order, requesting that the defendants be restricted from granting the pay raises or otherwise amending the budget without compliance with the Open Meetings Act. Relying on the statute, he also sought to recover his attorney's fees and costs. *Id*.

At the hearing on the restraining order, evidence was introduced that the City Charter required that the City Council only exercise its powers at "public" meetings, and that the City Administrator was required to review and approve proposed amendments to the budget *prior to* council vote. *Id*. at 422-23. The evidence also revealed that the City Administrator had not reviewed or approved the amendment. *Id*. Based on this evidence, the trial court concluded that the defendants had violated the Charter and entered a restraining order that restricted any further action by the City Council to grant any pay raises until there had been compliance with the Charter; however, the trial court did not make a ruling on the Open Meetings Act claim. *Id*. at 423.

Soon thereafter, the City Administrator reviewed and approved the proposed amendments and the City Council, at its meeting on August 7, 2007, approved the proposed pay raises. *Id*. at 423. Mr. Fannon did not challenge the propriety of this subsequent action; however, he filed a motion for summary judgment seeking a ruling that the defendants had violated the Open Meetings Act. *Id*. At the hearing on Mr. Fannon's motion, the trial court stated that "it was obvious . . . in the first hearing that part of the charter had not been complied with where the administrator was not made aware of the pay raises that were granted," however, the court denied the motion for summary judgment upon the determination that the claim was rendered moot when the resolution was adopted at the August 7, 2007 meeting. *Id*.

Mr. Fannon then filed a motion to recover his attorney's fees and discretionary costs, contending that he "successfully demonstrated his right to obtain a temporary injunction" and, as an elected official, "was entitled to be represented at public expense." *Id*. The defendants opposed the motion. *Id*. The trial court granted the motion and awarded Mr. Fannon $7,500 in attorney's fees, plus discretionary costs. *Id*. at 423-24. In its ruling, the court acknowledged that the Open Meetings Act claim was moot, but granted attorney's fees,

reasoning that the plaintiff "[had] to mount the lawsuit because of the Defendants' alleged wrongdoing" in order to "achiev[e] the goal of ensuring that th[e] raises were implemented in a manner that was faithful to law." *Id*.

The defendants appealed the award of attorney's fees and discretionary costs and this court reversed the trial court, finding that Mr. Fannon was not a "prevailing party," as the restraining order was not a determination on the merits, and, therefore, he was not entitled to recover attorney's fees and costs. *Id.* at 424; *see also Fannon v. City Of LaFollette*, No. E2008-01616-COA-R3-CV, 2010 WL 92540, at *14 (Tenn. Ct. App. Jan. 11, 2010) *aff'd in part, rev'd in part*, 329 S.W.3d 418 (Tenn. 2010). The Supreme Court granted review and reinstated the award.

In its analysis, the Supreme Court examined a number of interpretations of "prevailing party" derived from federal jurisprudence as well as Tennessee cases noting, in relevant part, that: "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id.* at 430 (quoting *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). The court also noted that "a party need not attain complete success on the merits of the lawsuit in order to prevail. Rather, a prevailing party is one who has succeeded on any significant issue in litigation *which achieves some of the benefit the parties sought in bringing suit*." *Fannon*, 329 S.W.3d at 431 (emphasis added) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir.1978)); *see also Five Oaks Golf & Country Club, Inc. v. Farr*, No. M2013-01896-COA-R3-CV, 2014 WL 1168908, at *2-3 (Tenn. Ct. App. Mar. 20, 2014). The Court further found the following "instructive":

> In *Consolidated Waste Systems, LLC v. Metro Government of Nashville & Davidson County*, *Consolidated Waste* challenged the constitutionality of ordinances that prevented the development of its proposed landfill. No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *1 (Tenn. Ct. App. June 30, 2005). While acknowledging that the ordinances were unconstitutional, the trial court enjoined development of the landfill but permitted Metro a period of time to correct the infirmities in the ordinances. *Id*. at *49. The Court of Appeals concluded that Consolidated Waste was a prevailing party [stating]:
>
> > *We agree that the injunction mitigated the effect of the declaratory judgment. After careful consideration, however, we do not think it had the effect of rendering [the Plaintiff] a non-prevailing party*. The effect of the declaratory judgment was to render the ordinances unenforceable. That was one of the primary benefits sought. The injunction required Metro to adopt

ordinances correcting the constitutional infirmities within a specified time. Therefore, the judgment affected [Metro's] behavior toward [the Plaintiff]. If Metro did not act within the deadline established by the court, it could not have prevented [the Plaintiff] from constructing the landfill where it proposed.

*Id*. (emphasis added); *see also Qualls v. Camp*, No. M2005-02822-COA-R3-CV, 2007 WL 2198334, at *6 (Tenn. Ct. App. July 23, 2007) (noting that status as a prevailing party arises when the outcome of litigation "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"); *C.S.C. v. Knox Cnty. Bd. of Educ.*, No. E2006-01155-COA-R3-CV, 2007 WL 1519543, at *4 (Tenn. Ct. App. May 25, 2007) ("[T]he Plaintiffs obtained sufficiently successful results in the overall litigation to achieve 'prevailing party' status").

*Fannon*, 329 S.W.3d at 431.

Based on the above, the Supreme Court concluded that Mr. Fannon was the prevailing party, notwithstanding that the issue which had prompted suit, the alleged violation of the Open Meetings Act, was rendered moot during the pendency of his action, because "[t]he litigation had altered the 'legal relationship' between the parties and served to modify the 'behavior' of the Defendants." *Id*. at 432. The Court explained that "[t]he plaintiff obtained some relief inasmuch as the effect of the resolution was suspended until and unless the City Council complied with the terms of the Charter. The restriction remained in force until remedial action was taken." *Id*. at 432. By obtaining an injunction against the defendants from making budget amendments and by effectively invalidating the actions taken in the June 2007 meeting, Mr. Fannon obtained the relief he sought. *Id*. In other words, *but for* the plaintiff's suit, the City Council would not have complied with the City Charter's procedural requirements in implementing and approving a resolution for raises. Therefore, the Supreme Court stated it was not necessary in this instance for the trial court to address the merits of the case to give a plaintiff "prevailing party" status. *Id*.

Although the *Fannon* holding was premised upon a statutory entitlement to recover attorney's fees, this court has adopted a consistent approach in construing the "prevailing party" in the context of contractual attorney's fees clauses. *See Isaac v. Ctr. for Spine, Joint, & Neuromuscular Rehab., P.C.*, No. M2010-01333-COA-R3-CV, 2011 WL 2176578, at *8 (Tenn. Ct. App. June 1, 2011) (quoting *Dairy Gold, Inc. v. Thomas*, No. E2001-024630-COA-R3-CV, 2002 WL 1751193, at *4 (Tenn. Ct. App. July 29, 2002)) (defining "prevailing party" as "the party to a suit who successfully prosecutes the action or successfully defends against it, *prevailing on the main issue*, even though not necessarily to the extent of his original

contention.") (emphasis in original); *see also RCK Joint Venture*, 2014 WL 1632147, at *5 (quoting *Fannon*, 329 S.W.2d at 431) (stating "a prevailing party is one who has succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.").

We have further held that the "prevailing party" is the party "who obtains some relief on the merits of the case *or* a material alteration in the legal relationship of the parties." *Isaac*, 2011 WL 2176578, at *8 (quoting *Estate of Burkes v. St. Peter Villa, Inc.*, No. W2006-02497-COA-R3-CV, 2007 WL 2634851, at *4 (Tenn. Ct. App. Sept. 12, 2007)) (emphasis added); *accord Ingram*, 2013 WL 3968155, at *28. Moreover, there are no bright-line rules in a prevailing party determination; as such, these determinations are necessarily fact-intensive and fact-specific. *RCK Joint Venture*, 2014 WL 1632147, at *5 (citing *Fannon*, 329 S.W.3d at 432).

As our Supreme Court concluded in *Fannon*, a party may be recognized as the prevailing party if that party achieves the primary benefit sought in instituting the legal proceedings and/or if the action modifies the opposing party's behavior in a way that provides a direct benefit, regardless of the fact there was no hearing or judgment on the merits. *See Fannon*, 329 S.W.3d at 431; *see also Isaac*, 2011 WL 2176578, at *8. Wife's primary purpose in filing the petition for contempt was to compel Husband to comply with paragraph 3 of the MDA by removing her from all liability on the mortgage. The record clearly establishes that, by filing and pursuing this action, Wife altered Husband's behavior by forcing him to comply with paragraph 3 of the MDA by paying off the mortgage, and by altering Husband's behavior, Wife achieved the benefit she sought. Moreover, as the trial court correctly concluded, *but for* Wife instituting legal proceedings to procure the enforcement of the provision requiring Husband to satisfy the debt on the mortgage, Husband would not have complied with the MDA.

For the foregoing reasons, we have concluded that Wife was the prevailing party even though the trial court did not address the merits of the case.

## IV. THE AWARD OF ATTORNEY'S FEES

Wife raises one issue on appeal. She contends she is entitled to recover all of her attorney's fees, that being $8,637.50, instead of $4,000 as awarded by the trial court. She contends she incurred these fees in addressing what amounted to a "long and tedious procedural history," and Husband's numerous filings. Husband, conversely, blames Wife for the litigious nature of the proceedings, and argues that she should not have been awarded any of her attorney's fees.

The trial court is entitled to exercise its discretion in determining the amount of attorney fees to award. *Shamblin v. Sylvester*, 304 S.W.3d 320, 331-32 (Tenn. Ct. App. 2009); *Chaffin v. Ellis*, 211 S.W.3d 264, 291 (Tenn. Ct. App. 2006); *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 535-36 (Tenn. Ct. App. 2002). We thus review the amount of an award of attorney's fees under the abuse of discretion standard. *Id.*; *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court. *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

The MDA provides in paragraph 19 for "reasonable" attorney's fees. In Tennessee, the establishment of a reasonable attorney's fees is determined in accordance with the factors set out in the Rules of Professional Conduct. Tenn. Sup. Ct. R. 8, RPC 1.5; *Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Among these factors are the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, and the fee customarily charged in the locality for similar legal services. *Id.* Moreover, the trial court has the discretion in determining the amount of attorney fees to award. *Shamblin,* 304 S.W.3d at 331; *Chaffin*, 211 S.W.3d at 291.

As the prevailing party in the trial court, Wife was entitled to recover *reasonable* attorney's fees incurred in seeking enforcement of the MDA due to Husband's noncompliance and the trial court has the discretion to determine which services were reasonably necessary. Wife's request for attorney's fees was properly supported by the affidavit of her counsel; the total amount sought by Wife, $8,637.50, was incurred in not only litigating her petition but in defending Husband's petitions for contempt and for breach of contract. Although Wife was the prevailing party for purposes of the enforcement provision of the MDA, specifically paragraph 19, it was for the trial court to determine whether she attained complete success on the merits of her lawsuit, and the court had the discretion to take this, and other relevant factors into consideration when deciding the fees she may recover. *Id.*

Having considered the relevant circumstances, including the attorney's fees incurred by Wife in prosecuting and defending the overlapping, but separate, claims regarding the enforcement of the MDA, and the fact that Husband voluntarily dismissed his fourth petition for contempt, we are unable to conclude that the trial court exceeded its discretion in awarding Wife only a portion of the attorney's fees she incurred in the trial court. We, therefore, affirm the award of Wife's attorney's fees related to her enforcement of the MDA in the amount of $4,000.

## V. ATTORNEY'S FEES ON APPEAL

Each party seeks to recover their respective attorney's fees incurred on appeal. The decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court. *Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010).

We have affirmed the trial court in all respects, including the trial court's determination that Wife was the prevailing party, and that she was entitled to recover her reasonable attorney's fees incurred at the trial court level to procure the enforcement of the MDA; therefore, Wife is also the prevailing party in this appeal. In fact, she prevailed on every issue raised by Husband. Realizing that paragraph 19 of the MDA applies to her attorney's fees incurred on appeal, we have determined that Wife is entitled to recover the reasonable attorney's fees she has incurred in this appeal, the amount of which shall be determined by the trial court on remand.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against Husband.

_____
FRANK G. CLEMENT, JR., JUDGE